## Richmond

UNITED STATES EXPRESS CO. V. CITY OF PORTSMOUTH.

March 13, 1913.

1. INTERSTATE COMMERCE—*Shipments Between Two Points in Same State—License Tax—Express Companies—Constitutional Law.*— A city ordinance imposing a license tax upon an express company for receiving a package in said city to be transported to another point in this State, expressly excluding any business for delivering packages to points outside of the State, and any business done for the Government of the United States, or this State, their officers or agents, is not a regulation of or burden upon interstate commerce within the inhibition of the Constitution of the United States, although the route by which the package was shipped was not entirely within this State.

Error to a judgment of the Circuit Court of the city of Portsmouth.

*Affirmed.*

The opinion states the case.

*Thomas W. Shelton* and *Frank H. Platt,* for the plaintiff in error.

*John W. Happer,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error, the United States Express Company, was convicted of violating an ordinance of the city of Portsmouth imposing a license tax on express companies carrying on business in the city.

The ordinance imposing the tax is as follows: "Every express company, or person, firm or corporation engaged

in the business of transporting packages, parcels or other property in the city of Portsmouth, as the original point of delivery, to be delivered or carried to a point outside of the city, but within the State of Virginia, shall pay for doing such business, but not including any business for delivering parcels, packages or other property to the city of Portsmouth to be delivered at a point without the State of Virginia, or of receiving parcels, packages, or other property in the city of Portsmouth, to be delivered without the State of Virginia, and not including any business done for the government of the United States, of the State of Virginia, their officers or agents, a license tax of $100 per year, or part of a year, and an additional tax on each cart, delivery truck or wagon, as provided by section on 'Carts, Drays, Trucks or Wagons.' "

The United States Express Company has a place of business in the city of Portsmouth, and without paying the license required by the said ordinance, carried a package from that city to the city of Staunton. The points of shipment and of destination are in the State of Virginia, though the route by which the package was shipped is not entirely within the State.

It appears from the agreed statement of facts "that the United States Express Company enters the city of Portsmouth only by way of the boats of the Norfolk and Washington Steamboat Company, plying between Portsmouth, Virginia, and Washington, D. C. The package was thereupon placed aboard one of the steamers plying between Portsmouth, Va., and Washington, D. C., and transported to the city of Washington; it was there transferred across the city of Washington in its wagon, and delivered to a messenger of the United States Express Company operating on the Baltimore and Ohio Railway, and thence transported in one of the cars of the Baltimore and Ohio Railway through the State of Maryland to Harper's Ferry, and

thence over the lines of the Baltimore and Ohio Railway, upon which the United States Express Company operates, to Staunton, Va., where it was delivered to the consignee in due course of business, this being the usual, the necessary, and the only route by which the United States Express Company could have transported this package."

The only question involved in this writ of error is whether the tax thus imposed is a regulation of or burden upon interstate commerce, and, therefore, in violation of the Federal Constitution, which vests in Congress the sole authority to regulate commerce among the States.

The precise question involved in this case was determined by the Supreme Court of the United States on January 6th of this year in the case of *Ewing* v. *City of Leavenworth*, 226 U. S. 464, 33 Sup. Ct. 157, 57 L. Ed. That decision is, as it seems to us, conclusive of this case. So far as they affect the question involved here, the facts of that case and the ordinance, the constitutionality of which is denied, were substantially the same as the facts of this case and the ordinance of the city of Portsmouth.

In deciding that case the court, among other things, said: "We are of opinion that this case is controlled by *Lehigh Valley Railroad* v. *Pennsylvania*, 145 U. S. 192 [202, 12 Sup. Ct. 806, 808, 36 L. Ed. 672], in which it was held that a State might tax the receipts of a railroad corporation for the portion of the transportation which was within the State, although the transportation then in question while between points within the State, passed over the railroad which traversed, for a part of the way, territory of an adjoining State. It was held that a tax upon such receipts did not tax interstate commerce, and this court said (p. 202) :

" 'It should be remembered that the question does not arise as to the power of any other State than the State of the termini, nor as to taxation upon the property of the

company situated elsewhere than in Pennsylvania, nor as
to the regulation by Pennsylvania of the operations of this
or any other company elsewhere, but it is simply whether,
in the carriage of freight and passengers between two
points in one State, the mere passage over the soil of an-
other State renders that business foreign which is domes-
tic.  We do not think such a view can be reasonably enter-
tained, and are of opinion that this taxation is not open to
constitutional objection by reason of the particular way
in which Philadelphia was reached from Mauch Chunk.'

"The Lehigh Valley case was cited with approval in
*U. S. Express Co.* v. *Minnesota,* 223 U. S. 335, 342 [32 Sup.
Ct. 211, 56 L. Ed. 459], as determinative of the proposition
that the State of Minnesota might tax the receipts of an
express company from the transportation of packages from
points within the State to other points therein, although
the transportation was in part outside the State.

"It is contended, however, that the contrary result must
be reached, applying the principles laid down in *Hanley*
v. *Kansas City Southern Ry. Co.,* 187 U. S. 617 [23 Sup.
Ct. 214, 47 L. Ed. 333].  In that case this court declared
unconstitutional a law of Arkansas undertaking to fix rates
upon railway transportation, the transportation in ques-
tion in that case being a single carriage partly outside of
the State of Arkansas from a point within to another point
within the State.  In the particular instance the transpor-
tation covered 116 miles, of which only 52 miles were
within Arkansas and the rest without the State.  It was
held that the right to regulate such commerce was solely
in Congress under the Constitution, and that the transpor-
tation was a single and entire thing, and as a subject for
rate legislation was indivisible.  The case of *Lehigh Valley
Railroad* v. *Pennsylvania, supra,* was called to the atten-
tion of the court, and of that case this court said [187
U. S. page 621, 23 Sup. Ct. 215, 47 L. Ed. 333] :

" 'That was the case of a tax, and was distinguished ex-

pressly from an attempt by a State directly to regulate the transportation while outside its borders.   145 U. S. 204 [12 Sup. Ct. 806, 36 L. Ed. 672].   And although it was intimated that, for the purposes before the court, to some extent commerce by transportation might have its character fixed by the relation between the two ends of the transit, the intimation was carefully confined to those purposes.   Moreover, the tax "was determined in respect of receipts for the proportion of the transportation within the State."   (145 U. S. 201.)   [12 Sup. Ct. 806, 36 L. Ed. 672.] Such a proportioned tax had been sustained in the case of commerce admitted to be interstate. *Maine* v. *Grand Trunk Railway Co.,* 142 U. S. 217.   [12 Sup. Ct. 121, 163, 35 L. Ed. 994.]   Whereas, it is decided, as we have said, that when a rate is established, it must be established as a whole.'

"The distinction is applicable here.   There is no attempt to fix a rate by the authority of the State, which, while single and complete in itself, covers for a considerable part interstate transportation.   The privilege tax levied in this case expressly excludes commerce of an interstate character, or business done for the government, and is levied solely on the business done in the city of Leavenworth in receiving packages from points within the State and in transporting packages to like points.   Applying the principles of the Lehigh Valley case to such a situation, we are of opinion that for the purpose of a privilege tax for business thus done, the municipality, acting under authority of the State, did not exceed its just power."

The trial court in this case having reached a conclusion in accord with that decision, its judgment must be affirmed.

*Affirmed.*