## Tax on Transportation Receipts

184

RUTTER, Deputy Attorney General, December 18, 1944.—The Department of Revenue has addressed an inquiry to us concerning the Act of June 7, 1879, P. L. 112, as supplemented by the Act of June 1, 1889, P. L. 420. These two acts are revenue measures.

Section 7 of the Act of 1879 provided, among other things, that every railroad company doing business in Pennsylvania should pay a tax of eight tenths of one percent upon its gross receipts. This section was repealed by section 36 of the Act of 1889. The Act of 1889, by section 23, substantially reënacted section 7 of the Act of 1879, with, however, some change in phraseology. The same rate of tax was imposed on gross receipts of railroad companies doing business in Pennsylvania, but the tax was restricted to gross receipts of such companies "received from passengers and freight traffic transported wholly within this State". The words "transported wholly within this State" did not appear in section 7 of the Act of 1879.

You have asked us to advise you whether the tax imposed by the aforesaid legislation applies to gross receipts of railroads doing business in Pennsylvania arising from transportation originating within Pennsylvania and terminating therein, but which, en route, passes through another State, and also whether the tax applies to transportation originating outside Penn-

sylvania and terminating outside Pennsylvania, insofar as the revenues from such transportation arise from those portions of the hauls which take place wholly within Pennsylvania. All such shipments are, of course, interstate. The question is whether the portions thereof which occur wholly within the State can be taxed under the subject legislation.

It is quite clear that the language of section 7 of the Act of 1879 was broad enough to cover receipts from interstate, as well as from intrastate, transportation. The problem presented is one of statutory construction, not of constitutional power, and involves the decision whether the language of section 23 of the Act of 1889 is broad enough to tax both interstate (to the permitted constitutional degree) and intrastate transportation.

Under the Act of 1879, a tax was assessed upon the gross receipts of a company received from foreign and interstate transportation. The tax was sustained by the Supreme Court of Pennsylvania in Philadelphia and Southern Mail Steamship Co. v. Commonwealth, 104 Pa. 109 (1883). The Supreme Court of the United States reversed this decision on appeal in Philadelphia and Southern Steamship Co. v. Pennsylvania, 122 U. S. 326 (1887), on the ground that the tax was a burden upon interstate commerce, and that its imposition by the Commonwealth conflicted with the power of Congress to regulate interstate commerce. The Supreme Court of Pennsylvania also sustained the tax under the Act of 1879 upon the gross receipts of a telegraph company received from interstate messages: Western Union Telegraph Co. v. Commonwealth, 110 Pa. 405 (1885). This case was also reversed by the Supreme Court of the United States: Western Union Telegraph Co. v. Pennsylvania, 128 U. S. 39 (1888). In this case the Supreme Court of the United States said that the Commonwealth was not entitled to recover for the taxes in question "excepting in respect to the messages transmitted *wholly within the State*". (Italics supplied.)

It would appear that section 23 of the Act of 1889 was passed by the General Assembly to overcome the aforesaid decisions of the Supreme Court of the United States, both from an historical viewpoint and because the tax was thereby restricted to transportation "wholly within this State", the very words used by the Supreme Court of the United States in the Western Union Telegraph case.

In Lehigh Valley Railroad Co. v. Commonwealth, 22 W. N. C. 525 (1888), the Supreme Court of Pennsylvania affirmed an assessment of a gross receipts tax under the Act of 1879 on revenues derived from transportation from a point in Pennsylvania to a destination in Pennsylvania, but which, en route, passed through an adjoining State. The transportation was interstate. The tax was determined by apportioning the total receipts received from the interstate shipment, on a basis of mileage, between that part of the transportation which occurred outside Pennsylvania and the part which occurred inside Pennsylvania. This case was affirmed by the Supreme Court of the United States in Lehigh Valley Railroad Co. v. Pennsylvania, 145 U. S. 192 (1892). A similar case was Commonwealth v. Lehigh Valley Railroad Co., 129 Pa. 308 (1889), affirmed in Lehigh Valley Railroad Co. v. Pennsylvania, 145 U. S. 205 (1892).

It will be seen that in the foregoing cases arising under the Act of 1879 the Supreme Court of the United States sanctioned the imposition of a tax upon the proportion or fraction of the gross receipts arising from an interstate shipment which took place in Pennsylvania; that is, a proportion determined by taking the mileage in Pennsylvania as the numerator and the mileage of the entire route as the denominator of the fraction. There are other decisions to the same effect: United States Express Co. v. Minnesota, 223 U. S. 335 (1912), Ewing v. City of Leavenworth, 226 U. S. 464 (1913), Cornell Steamboat Co. v. Sohmer, 235

U. S. 549 (1915), and Wilmington Transportation Co. v. Railroad Commission of the State of California, 236 U. S. 151 (1915).

It is clear, therefore, as we have already hereinbefore said, that our problem is not one whether the Commonwealth *can* tax part of the gross receipts arising from interstate shipments passing through Pennsylvania, but is one whether the Commonwealth *has* imposed such a tax.

It is our conclusion that, although the Commonwealth could have taxed, and did tax, under the Act of 1879, the gross receipts of a railroad company arising from transportation over those segments of an interstate route lying within Pennsylvania, where the points of origin and destination were both within the State, the General Assembly has precluded the Commonwealth from imposing such a tax by the repeal of section 7 of the Act of 1879 and the substitution therefor of section 23 of the Act of 1889. By the latter legislation the Commonwealth is restricted in the imposition of the subject tax to gross receipts arising from transportation "wholly within this State"; and these words mean precisely what they say. Transportation wholly within this State is not transportation originating and terminating outside Pennsylvania, although passing through Pennsylvania; nor is it transportation originating and terminating in Pennsylvania, but passing through another State en route. It is transportation originating and terminating in Pennsylvania, and which takes place entirely in Pennsylvania.

We are further fortified in our conclusion by two additional reasons. The first is that provisions of statutes imposing taxes are strictly construed. See section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558, and the cases and source notes in the annotations thereto. Secondly, in considering the intention of the legislature in interpreting a statute, among other things which may be properly considered, are the administrative interpre-

tations of the statute under examination. See section 51 of the Statutory Construction Act, supra, 46 PS §551, and the cases and source notes in the annotations thereto. We are informed that, from the time the subject Act of 1879 was supplemented in 1889, it has been consistently interpreted by revenue officials of the Commonwealth as confining the imposition of the tax under discussion to purely intrastate gross receipts of railroads, up until the latter part of 1939. In short, for half a century no attempt had been made by officials of the Commonwealth charged with the administration of the subject legislation to impose any tax on gross receipts of railroads any portion of which was derived from interstate transportation. This settled policy was, of course, known to the legislature, and if the legislature disapproved such a policy it had ample opportunities to change it. This it has not done. For us at this time to attempt to uproot such a firmly-established doctrine would be, to say the least, indifferent to what appear to be the desires of the General Assembly, and would not be conducive to stability and continuity of executive and administrative determinations and practice.

We recapitulate. Pennsylvania can, under appropriate legislation, tax that portion of the gross receipts arising from interstate transportation which originates and terminates in the State, and which relates to the segment of such transportation which occurs in Pennsylvania, using as the numerator of the fraction the mileage in Pennsylvania, and as the denominator thereof the mileage of the entire route. Pennsylvania cannot tax the entire gross receipts arising from transportation between points within Pennsylvania, but over a route lying partly outside the State. Nor can Pennsylvania tax the entire receipts from transportation between two points outside Pennsylvania, but over a route lying partly inside Pennsylvania. However, under the present legislation, Pennsylvania cannot tax any portion of gross receipts arising from interstate transportation, part of which takes place in Pennsylvania.